Percy M. Cole, Peter P. Peterson, J. A. Englund, Anton Klemmens, C. W. Jones, W. H. Makee, A. G. Kinslow, G. A. Robertson, R. M. Woods, Paul C. Paulson, Neils Nelson, and W. H. Campbell for Themselves and for the Benefit of all other Residents and Taxpayers of the Village of Kenmare, in said County and State v. The Minnesota Loan & Trust Company, a Corporation, D. W. Casseday, Eli C. Tolley, W. T. Smith, Mary H. Smith, Winfred W. Smith, and Kenmare Security Bank, a Corporation.

Opinion filed June 19, 1908.

### Dedication — Public Parks — Easements — Estoppel.

1. The statutes of this state, prescribing the method of dedicating real property to public uses, as well as easements therein for such purposes, are not and were not intended to be exclusive of the common-law method of dedication nor do they abrogate the well-settled rule of implied dedication by estoppel in pais.

### Same — Statutory and Common Law Method.

2. Section 3016, Rev. Codes 1905, which authorizes and empowers cities and villages to receive, by gift or devise, real estate for purposes of parks or public grounds, is not exclusive in its operation, and lands or easements therein may be acquired for such purposes by a common-law dedication thereof. The owners and proprietors of the townsite of K. left a square in the center thereof, undivided into lots, and designated simply by the numeral "2." The other blocks were divided into lots, and those blocks surrounding block 2 were platted into lots, facing toward said square. One of the proprietors of the townsite had active charge of the sale of lots therein, and he represented to prospective purchasers that such square was and would remain a public square or park. Plaintiffs, in reliance thereon, and also upon like representations made by one C, who was also a partner in such townsite enterprise, purchased lots fronting on said square, and made valuable improvements thereon. *Held,* that said acts and representations constituted a common-law dedication of such block as a public square or park. *Held,* further, that defendants are estopped, by reason of such acts and representations, to deny that said block 2 has been dedicated to the public for the uses aforesaid.

### Same — Evidence.

3. An intention to dedicate property to a public use must be clearly established, but such an intention may be shown by deed, by words, or by acts. Construing the testimony in the light of such rule, it is held that the intention of the proprietors of the townsite to dedicate said block to the public is clearly established.

**Same — Public Squares.**

> 4. The rule regarding dedication by estoppel with reference to streets applies equally to public squares and parks.

Appeal from District Court, Ward County; *Cowan,* J.

Action by Percy M. Cole and others against the Minnesota Loan & Trust Company and others. Judgment for plaintiffs, and defendants appeal.

Affirmed.

*Barnett & Richardson, Burke & Middaugh,* and *Francis J. Murphy,* for appellants.

Acts of dedication must be unequivocal. Harris' Case, 20 Grat. 837; Holdaone v. Gold Spring, 21 N. Y. 474; Washburn on Easements, 180; 13 Cyc. 451; Milliken v. Denny, 53 S. E. 867.

An agent, unless authorized, cannot dedicate to public use. 10 Cyc. 927; Stow v. Wise, 18 Am. Dec. 99; Town v. Bland, 56 S. E. 804; Klug v. Jeffers, 85 N. Y. S. 423; Stacy v. Springs Co., 79 N. E. 133.

Intention to dedicate by owner and acceptance by proper authorities, are essential to a common law dedication. Grube v. Nichols, 36 Ill. 92; Town v. Grundman, 45 N. E. 164; Morrison v. Marquardt, 92 Am. Dec. 444; Lee v. Lake, 90 Am. Dec. 220; Culmer v. City, 75 Pac. 620; Atty. Gen. v. Whitney, 137 Mass. 450; Sanders v. Village, 118 Fed. 720; Farlin v. Hill, 69 Pac. 237; Niles v. City, 58 Pac. 190; County v. Dayton, 17 Minn. 260; Westfall v. Hunt, 8 Ind. 174; Scantlin v. Garvin, 46 Ind. 262; Allen v. Duluth Co., 48 N. W. 1128; DeArmas v. City, 5 La. 132.

In absence of use, formal acceptance of dedicated land is necessary. Steinaur v. City, 45 N. E. 1056; Baker v. Johnston, 21 Mich. 319; Wilson v. Land Co., 39 So. 303; Town v. Trust Co., 70 Pac. 757; City v. Drexel, 30 N. E. 774; Kidd v. McGinnis, 1 N. Dak. 331, 48 N. W. 221; City v. Madison Co., 75 N. E. 105; Baker v. Johnson, 21 Mich. 319; Pitcairn v. Town, 135 Fed. 587; Town of West Point v. Bland, 56 S. E. 804.

*David H. Pierce* and *L. W. Gammons,* for respondent.

Lands represented by spaces on recorded plats not a part of platted lots, are presumed to be dedicated to public use. Elliott

Roads & Streets, (2d Ed.) section 130; Hitchcock v. Oberlin, 26 Pac. 466; Arnold v. Weiker, 55 Kan. 510; Maywood Co. v. Maywood, 118 Ill. 61; M. E. Church v. Hoboken, 33 N. J. L. 25; Mier v. Portland Ry. Co., 1 L. R. A. 85.

Common law dedication is by estoppel in pais. Abbots Mun-Corporations, Vol. 2, 1724, 1749; Herman on Estoppel and Res Judicata, 1788; Dillon on Municipal Corporation, Par. 627, 653; Elliott Roads, etc., section 123.

The vital principle of common law dedication is intention. Harding v. Jasper, 14 Cal. 643; Campbell v. City of Kansas, 10 L. R. A. 551; Church v. City of Portland, 6 L. R. A. 259.

Same rules apply to public squares as to highways. Church v. City of Portland, supra; New Orleans v. United States, 10 Pet. 714; Mankato v. Willard, 13 Minn. 23; Price v. Thompson, 48 Mo. 363; Hunter v. Sandy Hill, 6 Hill. 407; Mowry v. Providence, 10 R. I. 152; San Leandro v. Le Breton, 13 Pac. 405; Huber v. Gazley, 18th Ohio, 18; Carter v. Portland, 4 Or. 339; M. E. Church v. Hoboken, 33 N. J. L. 25.

Intention to dedicate must be manifested by acts. Pittsburg v. Town of Crown Point, 50 N. E. 741; Kile v. Town of Logan, 87 Ill. 67; Moffett v. South Park Commissioner, 28 N. E. 975; City of Indianapolis v. Kingsbury, 101 Ind. 200; Miller v. City of Indianapolis, 24 N. E. 228; Pittsburg Ry. v. Noftsger, 47 N. E. 332; Elliott Roads and Bridges, section 126.

Actual fraud in representations not necessary; it is enough that they tend to mislead. Stevens v. Ludlum, 13 L. R. A. 270; Bigelow on Estoppel, 486; Edwards v. Dickson, 66 Texas, 613; Jackson v. Allen, 120 Mass. 64; White v. Ashton, 51 N. Y. 280; White v. Walker, 31 Ill. 422; Babcock v. People's Savings Bank, 118 Ind. 212; Anderson v. Hubbel, 93 Ind. 570.

Equity will enjoin erections in violation of easement. Wheeler v. Gilsey, 53 How. Pr. 147; Corning v. Lowerre, 6 Johns. Ch. 439; Tallmadge v. East River Bank, 26 N. Y. 105; Lawrence v. New York, 2 Barb. 580; Oakly v. Williamsburgh, 6 Paige, 262.

FISK, J. This litigation arose in the district court of Ward county, and the case is here for trial de novo. The appeal is from a judgment in plaintiff's favor, adjudging that block 2 of the original town site of the village of Kenmare in said county is and shall ever remain a public square, park and common, and forever en-

joining defendants and their heirs and assigns from in any manner interfering with or preventing the full, free, and unobstructed use by the public of said property as a public square or common, and also adjudging that plaintiffs recover their costs and disbursements of the action. Plaintiffs are residents and taxpayers of said village, and the owners of lots fronting upon said block, and they instituted the action in their own behalf, for the benefit of themselves and all other residents and property owners of said village, for the purpose of obtaining the relief awarded to them by the trial court. The respondents contend in brief that they are entitled to the relief aforesaid, upon the grounds, first, that said block was, long prior to the commencement of this action, dedicated to the public by a common-law dedication; and, second, that defendants by their conduct are estopped to deny that said block is a public square, park, or common. If either of these contentions is sound, the judgment must be affirmed, otherwise it should be reversed.

We deem it advisable to call attention, first to the issues as framed by the pleadings. The complaint, in substance, alleges the following facts:

· (1) That the defendant Minnesota Loan & Trust Company is a corporation, organized under the laws of the state of Minnesota, and the defendant the Kenmare Security Bank is a corporation organized under the laws of this state.

(2) Plaintiffs are residents and taxpayers of said village of Kenmare, and the owners of real estate fronting upon the square or block in question, and this action is brought for the benefit of each of the said plaintiffs, and of all residents and taxpayers of said village.

(3) That on November 26, 1900, one Crane received from the United States a patent conveying to him the N. E. quarter of the N. E. quarter, and lot 5, in section 19, township 160, range 88, and that, on or about March 19, 1897, said Crane and wife conveyed said property by warranty deed to the defendant the Minnesota Loan & Trust Company, which deed was recorded in the office of the register of deeds of said county, on March 25, 1897.

(4) On January 12, 1901, said Crane and wife by quitclaim deed conveyed to the Minnesota Loan & Trust Company all their right, title, and interest in and to said real estate, which deed was recorded on January 21, 1901, in the office of the register of deeds of said county.

(5) That on or about May 8, 1897, said Minnesota Loan & Trust Company, being the owner and proprietor of said real estate, caused to be surveyed and platted into squares, blocks, lots, streets, and alleys a portion of said real estate; that said land was so platted under the title of "Kenmare," and said plat was duly filed in the office of the register of deeds of said county on May 15, 1897, and duly recorded in Book A of Plats at page 14; that in said plat a portion of said land 300 feet square, was designated by the numeral "2," and said square was not subdivided into lots. The blocks on the different sides of said square were subdivided into lots, so arranged that the front of said lots faced said square.

(6) That said plat was in all things executed in accordance with the laws of this state. Plaintiffs allege that said square marked "2" on said plat was intended by said proprietors as a public square and common, for the use and benefit of the plaintiffs and all the residents of Kenmare, and that said proprietors did by their acts, as aforesaid, dedicate to the public said square, and all the streets and alleys appearing on said plat.

(7) That on January 15, 1901, said trust company by deed of warranty conveyed, or attempted to convey, to defendant Casseday the above-described real estate, including the said townsite of Kenmare, which deed was duly recorded.

(8) That on August 18, 1902, Casseday conveyed, or attempted to convey, by special warranty deed, to the defendants Tolley and Smith, the W. half of said square, marked on said plat with numeral "2," which deed was duly recorded in the office of the register of deeds of said county, and on September 13, 1902, Casseday by a similar instrument conveyed, or attempted to convey, to defendant bank the E. half of said square, which instrument was duly recorded in the office of the register of deeds.

(9) That on August 28, 1902, Smith and his wife conveyed, or attempted to convey, to defendant Winfred W. Smith by warranty deed an undivided half of said interest of said W. half of said square, marked "2," as aforesaid, which deed was duly recorded.

(10) That the W. half of the N. W. quarter of section 20, township 160, range 88, adjoins said town site of Kenmare on the east side thereof, and a patent from the United States was duly issued therefor, on April 1, 1899, conveying said land to one Stanley, and on January 16, 1899, Stanley conveyed said land to one Clark D. Smith by quitclaim deed.

(11) On April 21, 1899, said Clark D. Smith caused said last-described real estate to be surveyed and platted into blocks, lots, streets, and alleys under the name of "Tolley's Plat of Kenmare," which plat was duly executed and certified, and duly recorded; that said Clark D. Smith and wife, on October 18, 1900, conveyed by warranty deed a large portion of said real estate so platted to one Milburn Sandefur.

(12) That on or about July 12, 1901, defendant Casseday caused to be surveyed and platted the balance of the tract of land hereinbefore first described, as blocks 11 to 17, inclusive, of the town of Kenmare; that thereafter said Casseday conveyed a large portion of said land included in said last-described plat to said Milburn Sandefur by deed of warranty.

(13) During the times herein mentioned, defendant Tolley caused to be surveyed and platted 80 acres, embracing 28 blocks, lying immediately north of the plats hereinbefore described, and known as "Tolley's First Addition to Kenmare," which plat was duly recorded.

(14) That the lands embraced in the several plats herein described are now within the limits of the village of Kenmare.

(15) That ever since the making of the first plat above described, defendants Tolley, D. W. Casseday and W. T. Smith have each been authorized to sell lots within the townsite of said Kenmare, and each had a proprietary interest in said townsite during said time, including said square marked "2," and that all the lots in the vicinity of said square have been sold by said defendants, and purchased by the plaintiffs and others with reference to said public square, and with express representations by the owners thereof that said square was and should at all times remain and be maintained as a public square and common, for the use and benefit of these plaintiffs, and other residents of Kenmare, and said square has at all times been considered and understood to be a public square and common by the residents of said Kenmare, and has been thus treated, at all times, with the full knowledge and consent of the owners thereof; that moneys have been raised by subscription from these plaintiffs, and other residents of said Kenmare, for improving and beautifying said square, which moneys have been paid defendant proprietors of said townsite for such purpose, and have been expended by said proprietors of said townsite in improving said square, and in making it into a park and pleasure

ground for the common benefit of the residents of Kenmare; that said moneys were thus paid, and received upon the express stipulation and agreement, between the people paying the same and the said townsite proprietors, that said square should at all times remain and be maintained as a public square and common, and plaintiffs allege that the defendants herein have at all times represented to them, and to other residents of Kenmare, that said square is a public square, and said defendants have at all times intended the same to be a public square, and the same was left undivided into lots for the sole purpose of preserving it as a public square for the use and benefit of the residents of Kenmare; that said square has been used and occupied by the plaintiffs and the public generally as a public square and park for the past six years, with the full knowledge and consent of the original owners thereof, and has been universally recognized, accepted, and used by the public as such.

(16) Plaintiffs' further allege that if the defendants or any of them have, or have had, an unqualified fee-simple title in said square since the filing of the first plat aforesaid, the said holders of the record title have, by their acts, representations, and conduct lost all right and power to sell and dispose of said property to private individuals, to be used for private purposes, and that the holders of said record title, since the filing of said plat as aforesaid, have held the record title to said square, as trustees, for the use and benefit of the public. ·

(17) That notwithstanding the facts aforesaid, the defendants have, in direct violation of the rights of the public, and in the face of the long-continued use by dedication and acceptance of said public square, proceeded to have the said square surveyed and platted into lots and have attempted to sell, and are now attempting to sell, a fee-simple title to said public square, and to the several lots that they have wrongfully and unlawfully caused to be platted thereon, to private individuals for private purposes.

(18) That if the defendants are not restrained, they will proceed to sell said square, and the whole thereof, to private individuals for private use, thereby inflicting upon these plaintiffs and all other residents of said Kenmare great and irreparable injury.

(19) That it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief for said injur-

ies, and pecuniary compensation would not afford adequate relief therefor.

The prayer for relief is that the defendants be perpetually enjoined from in any manner alienating, incumbering, or in any way disposing of said square, or in any manner interfering with the use thereof by the public as such, and that the same be adjudged to be a public square and common; also that the conveyances which have been made by said defendants since May 15, 1897, whereby it has been sought to vest in any one a fee-simple title in and to said square for private use, be set aside and declared null and void, and that defendants be adjudged to hold the title to said property in trust, for the use and benefit of the public, also for general relief.

The defendants, answering said complaint, expressly admit paragraphs 1 to 5, inclusive, and 7 to 14, inclusive, and the allegations in paragraph 6 are admitted, except the portions thereof referring to said square, and in reference to the same defendants allege that said square is designated on said plat as block 2 in the same manner that other blocks are designated thereon, and the allegation that said square was intended by said proprietors as a public square and common, for the use and benefit of these plaintiffs and other residents of Kenmare, and that said proprietors did by their acts dedicate to the public said square, and all streets and alleys appearing on said plat, is denied, and defendants allege that said block 2 was not intended for public use as aforesaid. Further answering, defendants admit that E. C. Tolley, D. W. Casseday, and W. T. Smith had authority to sell lots within the townsite of Kenmare after the conveyance by the Minnesota Loan & Trust Company to said Casseday, but that said Tolley and Smith had no authority to sell any lots within said town site, except upon the submission of such sale to the said Casseday for his approval, and that neither the said Tolley nor Smith had any authority to donate or dedicate any part of said townsite, or any part of block 2 therein, to any person or persons whomsoever; and they deny each and every other allegation not specifically admitted.

It will be seen, therefore, that the chief contentions between these parties is as to whether the block in question has been dedicated by the proprietors to the public as and for a public park or common, or whether by their representations and conduct defendants are estopped, as against the plaintiffs and other residents of Kenmare, from asserting title thereto. At the conclusion of the

testimony the learned trial court made findings of fact in substantial conformity to the allegations of the complaint, and after a careful consideration of the testimony, we are of the opinion that such findings are amply supported by the great weight of the evidence, and by clear and satisfactory proof, of a character such as to leave in the minds of the chancellor no hesitation or substantial doubt as to its truthfulness. The testimony is very voluminous, embracing, as it does, about 350 pages of the printed abstract. We shall not attempt a detailed analysis of the same in this opinion, as it would serve no useful purpose so to do, and would swell the opinion to an unwarranted length. While the evidence regarding the main facts in issue was contradicted by the defendants, we are of the opinion that the clear preponderance of the evidence is in plaintiff's favor, and that the learned trial court correctly so found.

In the light of the facts as thus found to exist we will direct our attention to the questions of law advanced in appellants' brief. Appellants' counsel advance the following propositions in support of their contention that the judgment appealed from should be reversed: First. The statutes of this state provide for the acquisition of lands, within the corporate limits of cities and villages, for the purpose of parks and public grounds, and the procedure mentioned in the statute is exclusive. Second. The statute provides for the establishment of easements, enumerates them, and does not provide for easements in lands for park purposes, and, further, that the provisions of the statute are intended to be exclusive. Third. The statutes of this state provide for the dedication of lands to the public by plat, and such provisions, and the procedure therefor, are mandatory and exclusive with respect to the dedication of land. Fourth. That a common-law dedication or a common-law easement over land for park purposes does not exist, and cannot be acquired lawfully within this state. Fifth. That the evidence in the record, as to alleged acts in pais on the part of the defendants, or with the alleged knowledge and consent of defendants, is not sufficient to estop defendants from maintaining and asserting their exclusive rights with reference to the disposal of block 2.

We will consider the first four propositions together, as they involve questions closely related to each other and analogous principles of law. As we understand appellants' counsel, they contend that because the statutes of this state prescribe the method of acquiring

lands, within the corporate limits of cities and villages, for parks and public grounds, and for the establishment of easements in real property, and fail to provide for easements in lands for park purposes, such statutes are exclusive in their nature and effect, and hence cities and villages are powerless to receive lands for parks or public grounds otherwise than pursuant to such express statutes, and that there is no method, under the laws of this state, for acquiring an easement in land for park purposes. In the third and fourth points they contend that land cannot be dedicated to the public otherwise than by the statutory method, and that a common-law dedication or a common-law easement over land for park purposes is an unknown thing in this state. Their contention, in brief, is that it was the intent of the legislature, in the enactment of the statutes, to which they refer in their printed brief, authorizing cities and villages to acquire property for park purposes, and relating to dedication of land by plat or map, and statutes providing for the establishment of easements in real property, that such statutory method or methods should be exclusive. They say: "Section 3016, Revised Codes 1905, is the only statute authorizing and empowering cities and villages to receive, by gift or devise, real estate within their corporate limits, or within five miles thereof, for purposes of parks or public grounds. It is plain from this section, therefore, since it is the only statute on the subject, that it is the source of the power of cities and villages to receive land for park or public grounds." They also state: "In this state easements are creations of statute, and section 4787 expressly and specifically sets forth the definition of an easement in this state, and then enumerates such easements as may be lawfully acquired. It is significant that an easement to the public for park purposes, or for use as public grounds, is wholly omitted from the provisions of section 4787. It is plain, from the detailed and specific enumerations of the statute, that the enumerated easements in the statute are intended to be exclusive." Again they say: "The statutes of this state provide but one way for the dedication of land, and this procedure is found in section 2930, Revised Codes 1905. * * * This is the method which has been prescribed by the legislature with respect to the dedication of land. * * * It is the contention of appellants that this fact conclusively shows that the provisions of sections 3016 and 2930 are intended by the legislature to set forth the only and exclusive way by which a municipality or its inhabitants can secure land for park purposes."

It is a significant fact that counsel have cited no authorities in support of their above contentions, and we believe none exist. On the contrary, the rule is firmly established that statutes of the character aforesaid are not exclusive of the common-law method of dedication of lands and easements therein to the public for parks and other purposes. It would be announcing an unwarranted doctrine to hold that the statutes aforesaid were intended to abrogate the well-settled rule of equitable estoppel, and the common-law method of dedication is analogous to and rests upon the principles of such estoppel. A statutory dedication is distinguishable from a common-law dedication in this: That the former is in the nature of a grant, while the latter rests upon the principles of estoppel in pais, and we are entirely clear that the statutory regulations aforesaid were not intended to preclude or abridge in any manner the rights of the public based upon the principles of estoppel or implied dedication. The correct rule is stated in 13 Cyc. 440, as follows: "It is well settled that statutes providing means whereby lands may be dedicated to public uses do not prevent such uses being created by dedication as at common law. They merely provide a new mode by which a dedicator's intention to grant or convey his land may be carried into effect, and there may be a statutory dedication by some of the owners, and a common-law dedication by others. Nevertheless the statutes in no way enlarge, either expressly or by implication, the class of cases where an easement may be created in favor of the public by common-law dedication"—citing many authorities. To the same effect see, also, 9 Am. & Eng. Enc. of Law, 36, and many cases cited. See, also, 2 Dillon on Municipal Corporations, chapter 493. The supreme court of Illinois, in speaking upon this subject in Lake Erie, etc., R. Co. v. Whitham, 155 Ill. 514, 40 N. E. 1014, 28 L. R. A. 612, 46 Am. St. Rep. 355, used the following language: "Except in what are known as 'common-law dedications,' parol gifts of land or of easements therein are not effectual; it being elementary law that the title to lands cannot be transmitted inter vivos except by deed, or its equivalent, and that easements or other incorporeal heriditaments cannot be created by parol, but only by grant, or by prescription, whereby a conclusive presumption of a previous grant is raised. The provisions of chapter 109 of Hurd's Revised Statutes of 1893, entitled 'Plats,' furnish no exception to this rule. They merely

create a new mode of conveyance. By force of those provisions. the owner of the land, by platting it, and marking or noting on the plat that portions of the land are donated or granted to the public,. * * * in legal effect conveys the portion of the land so marked or noted to the designated donee or grantee, for the uses. or purposes therein indicated. By this statute the purposes for which an owner of land may dedicate or grant it away to others. are not enlarged, restricted, or modified, but a new mode is provided, by which his intention to grant or convey his land may be: carried into effect. But, by the rules applicable to what are known as 'common-law dedications,' lands or easements therein may be dedicated to the public, so as to become effectually vested without: the aid of any conveyance. It may be done in writing, by parol,. by acts in pais, or even by acquiescence in the use of the easement by the public. All that is necessary is that the intention to dedicate be properly and clearly manifested, and that there be an acceptance by or on behalf of the public. When that is done, the right or easement becomes instantly vested in the public. * * * At the common law they were confined to the purpose of highways; but in this country the doctrine has a wider application, and its limits have been judicially defined as extending to public squares, common lots, burying grounds, school lots, * * *" etc. Many more authorities might be cited, but the above will suffice to show that the first four propositions advanced by appellants' counsel are without merit.

This brings us to appellants' fifth and last proposition, which is : That the evidence is insufficient to show that defendants should be estopped from asserting title or right of possession to said block. They assert that, even under the rule of the common law, the facts. in the record will not warrant the court in finding that the plaintiffs and the public are entitled to a perpetual easement in said block for park purposes for the reasons : First. That no representations that block 2 was intended for a public park were made by the defendants. Second. That the representations which respondents allege were made, were, by the testimony of respondents. themselves, not relied on by them, and such alleged representations did not in any wise influence or affect respondents. Third. The defendant, whom respondents allege made representations as to block 2, had absolutely no authority, express or implied, to

make such representations, and this fact was known, or should have been known, to the plaintiffs. Fourth. That the defendants at all times maintained an exclusive ownership and supervision over said block. Fifth. That there was no user of said block by the public, except with the express consent of the defendant, upon the understanding that the same was private property. Sixth. That there was no intention, on the part of appellants, to dedicate said block 2, or an easement therein, to the public. Seventh. That under respondents' own testimony there was no acceptance whatever of the alleged dedication of block 2 by the public. Eighth That the testimony on the whole is not sufficiently clear, unequivocal, and well established to warrant the court, even under the common-law rule, in deciding, as a matter of law, that the burden of proof resting upon the respondents has been sustained.

The foregoing reasons, urged by appellants' counsel, involve mixed questions of both law and fact, and in respect to the facts, as we have heretofore stated, we think the findings of the trial court are amply supported by the evidence; and, without attempting a review of the testimony, we hold that the proof clearly shows that the defendants Casseday, Tolley, and W. T. Smith had a partnership arrangement between them for the acquisition, platting, and sale of the townsite in question, and that they, in fact, were the owners and proprietors of said townsite, and in causing the same to be platted, or at least in subsequently selling lots adjacent to and facing said block 2, it was their expressed intention that said block should remain a public square, park, or common, for the use and benefit of the inhabitants of such municipality. The fact that said block was not platted into lots, and the further fact that all the blocks surrounding the same were laid out into lots 25 feet in width, and facing such block 2, is of itself quite convincing proof of such intention. Besides, the clear preponderance of the testimony is that these surrounding lots, or many of them, were sold with such understanding, and many of the purchasers thereof, in reliance upon representations made by Tolley to that effect, purchased such lots, paying therefor more than they otherwise would have paid, and have placed valuable improvements thereon. In the light of these facts certain language in the opinion in Attorney General v. Abbott, 154 Mass. 323, 28 N. E. 346, 13 L. R. A. 251, is strikingly applicable. We quote: "The testimony makes it very plain that the establishment of open spaces or

parks was deemed an important feature of the scheme for selling
lots. At the outset it was a matter of discussion among the parties
interested. Lots fronting upon the parks, or having an unob-
structed view of them, were deemed more attractive. Assurances
were freely given, by those having charge of the sale of the lots,
that these spaces or parks should always be kept open. Four of
the original owners testified, in distinct terms, that it was the inten-
tion of those interested in the enterprise to make them open parks,
free to the public forever. This is so extremely natural and pro-
bable, and any other course would be so unlikely that evidence of
a contrary intention on the part of any one of them would be re-
ceived with some distrust. If the corporation had announced, at
the time of making the sales, that it reserved the right to cut up
the open spaces into building lots, to sell them after the village
should be established, it would, no doubt, have diminished the sales.
If the corporation had an intention to reserve this right, the course
pursued of inviting purchasers was inconsistent with common
honesty. * * * Without dwelling upon various other par-
ticulars of the evidence, which tends in the same direction, we can-
not doubt that it was a part of the scheme of the enterprise or
speculation that the public should understand that these spaces
should be left open for public use, and that no right was reserved
to sell them for building lots, and that the corporation held out to
the public this assurance, and at the time fully and fairly intended
to give up this right, and that the two persons upon whose sup-
posed dissent the defendant relies did not, in fact, dissent at the
time. If they had done so, their dissent would be overborne by
the action of the other four; but it seems to us more reasonable
and probable to suppose that at the time they acquiesced, if they
did not fully concur, in the views of the majority." To the same
effect is Carter v. City of Portland, 4 Or. 340, and Abbott v. Mills,
3 Vt. 521, 23 Am. Dec. 222. In the latter case it was stated:
"It is customary, in laying out towns, * * * to lay out a
square or common, and to locate building lots bordering thereon.
And these lots acquired an increased value in consequence of their
location. If a village is built up, and individuals buy these lots,
erect buildings, and commence the establishing of a village, and
make it a common center for the business of the town, the other
lands in town rise in value, of which the proprietors have all the
advantage. It would then be the height of injustice, and contrary

to every principle of good faith, to permit these proprietors to derive this advantage, and then frustrate the expectations held out, by resuming the lands thus set apart, and at a value greatly enhanced in consequence of their having been thus set out. * * * Whenever a public square or common is marked out and set apart as such by the owners or proprietors, and individuals are induced to purchase lots or lands bordering thereon, in the expectation held out by the proprietors or owners that it should so remain, or, even if there are no such marks placed on the ground, but a map or plan is made, and village lots marked thereon, and sold as such, it is not competent for the proprietors or owners to disappoint the expectations of the purchasers by resuming the lands thus set apart, and appropriating them to any other use."

We fully agree with appellants' counsel that "ownership of land once had is not to be presumed to have been parted with; but the acts and declarations relied on to show a dedication should be unequivocal and decisive, manifesting a positive and unmistakable intention, on the part of the owner, to permanently abandon his property to the specific public use. If they are equivocal, or do not clearly and plainly indicate his intention to permanently abandon the property to the public, they are not sufficient to establish a dedication. The intention to dedicate must clearly appear, though such intention may be shown by deed, by words, or acts. If by words, the words must be unequivocal, and without ambiguity. If by acts, they must be such acts as are inconsistent with any construction, except the assent to such dedication." Whether an intention to dedicate block 2 is sufficiently shown, or may be inferred from the face of the plat alone, it is unnecessary for us to determine. Upon this question, see Birge v. City of Centralia, 218 Ill. 503, 75 N. E. 1035, and cases cited, where it was held that leaving a blank space on a plat, without designating such space as a street, alley, or other public ground, does not constitute a dedication of the tract of land represented by such space, nor show a common-law dedication, in the absence of evidence of an intention by the grantor to make such dedication and an acceptance thereof by the public. We are entirely clear, however, that when the plat is considered in connection with the clear preponderance of the oral testimony as to representations made by the defendants, it unquestionably appears that it was the intention of the proprietors of this townsite to dedicate said block to the public as a public square, park, or

common, and their subsequent conduct, with reference to said square, lends force to this view. The evidence discloses that, under the supervision of defendant Tolley, this square was inclosed by a fence, and gates or stiles were placed at each corner, and at the center of each side line walks or paths were left from each of these openings to the center of the square; that the triangular pieces between the paths were broken, leveled, and seeded to grass, and trees set out along the boundaries of these various walks and the outside boundaries of the square; that a band stand was erected in the center of the square; and that at least two wells were dug in the square in an attempt to secure water for the use of the public. Some of these improvements were made by individual citizens of Kenmare and money was raised, by subscription among the citizens, for defraying a portion of the expenses of such improvements, and this square has at all times been used by the public as a park and place for holding celebrations, picnics, public speaking, band concerts, etc. These facts, taken in connection with the method of platting the adjacent blocks so that the lots each faced towards said square, is of a most convincing character to show the intention of the town-site proprietors in platting said town site. The fact that trees were planted in the manner aforesaid is wholly inconsistent with an intention on the part of such proprietors to cut up said block into lots for building purposes. While it is true, as we have stated, that an intention to dedicate is essential to a common law or implied dedication, such intention is not merely existing in the mind of a person, but it is the intention manifested by his words and acts to which the courts must give effect. If such intention to dedicate can be fairly inferred from his words or acts, it is sufficient. As said by Judge Elliott, in his work on Roads and Streets (page 92) : "The intent which the law means is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner. The public, as well as individuals, have the right to rely on the conduct of the owner as an indication of his intent. If the acts are such as would fairly and reasonably lead an ordinary prudent man to infer an intent to dedicate, and they are so received and acted upon by the public, the owner cannot, after acceptance by the public, recall the appropriation. Regard is to be had to the character and effect of the open and known acts, and not to any latent or hidden purpose. If the open and known acts are of such a character as to induce the belief that the

owner intended to dedicate it away to the public use, and the public and individuals, acting upon such conduct, proceed as if there had been, in fact, a dedication, and acquire rights which would have been lost if the owners were allowed to reclaim the land, then the law will not permit him to assert that there was no intent to dedicate, no matter what may have been his secret intent." The foregoing is quoted with approval in Pittsburg, etc., Ry. Co. v. Town of Crown Point, 150 Ind. 536, 50 N. E. 745. It is stated, in the opinion in said case, that a common-law dedication, or the presumption in favor of said dedication, operates by way of estoppel in pais. Many authorities might be cited to the same effect, but we deem it unnecessary to cite them, as the rule is well established.

We hold that the facts are sufficient upon which to base a finding of a common-law dedication of block 2 to the public, and we are also convinced that the judgment of the trial court must be affirmed, upon the ground that defendants are estopped, as against the plaintiffs and other citizens of Kenmare who purchased property facing said square, from asserting that the same is not a public square or park. In other words, as to these plaintiffs and the other purchasers of such lots, who purchased the same in reliance upon representations of Tolley that block 2 should remain a public square or park, it must be held that said square was dedicated as aforesaid. Upon the plainest principles of natural justice the appellants should be estopped to now claim that the square in question has not been dedicated to the public. Dedications arising by estoppel are of frequent occurrence, and are treated as implied dedications. "In such cases the party is estopped or precluded from going into the question as to whether or not there has been a valid dedication of the public use in question. It, therefore, makes no difference whether the essentials of a valid dedication do exist. Inquiry is precluded by estoppel; and whether or not it is precluded depends upon the principles of estoppel, and not upon the doctrine of dedication." 12 Cyc. p. 454, note 75. On page 455 of the same work the rule of implied dedication by estoppel is stated thus: "Where the owner of real property lays out a town upon it, and divides the land into lots and blocks, intersected by streets and alleys, and sells any of the lots with reference to such plan, or where he sells with reference to a map of the town or city, in which his land is so laid off, he thereby dedicates the streets and alleys to the use of the public. * * * On the same principle the owner will be held

to have dedicated to the public use such pieces of land  as  are marked on the plat or map as squares, courts, or parks.  The reason is that the grantor by making such a conveyance is estopped, as well as in reference to the public as to his grantees, from denying the existence of the easement"—citing a great many authorities. To the same effect see Elliott on Roads and Streets (2d Ed.) chapter 118, and cases cited.  Also Russell v. Lincoln, 200 Ill. 511, 65 N. E. 1088, and authorities therein cited.  In Clark v. City of Elizabeth, 40 N. J. Law, 172, the court in commenting upon the above rule said:  "Of the propriety of the rule there can be no question. It is based on the most obvious principles of fair dealing—the principles which require the vendor to deliver to his vendee that which the latter has bought and paid for—the principles which hold men to their lawful bargains."

The case at bar is quite similar to the case of Village of Princeville v. Auten, 77 Ill. 325.  In that case, as in this, a block was left in the center of the town, not divided into lots, as were the other blocks, but merely left blank.  It was proven that the proprietors of the townsite recognized the blank square as public grounds. and sold lots fronting thereon for an enhanced price.  It was held that the legal effect of what they did was an incomplete statutory dedication of the block to the public, but that it constituted a dedication thereof at common law.  Weger v. Delran Tp., 61 N. J. Law, 224, 39 Atl. 730, is another case where a vacant square was. left, but the same was not designated on the plat or map as a "square" or "park."  The proof shows that all the other blocks were divided into numbered lots; that the block in question was. distinguished from the other blocks by a different coloring, by the delineation of trees and of paths, and by rough representation of a fountain in the center; that a map showing these things was. shown to prospective purchasers, and that he declared to many persons his intent that this square should be and remain for public use as a place for recreation and pleasure to the public.  The court, after referring to the evidence, said:  "Although the map did not designate this block in words as 'square' or 'park,' yet it contained persuasive evidence that it was intended for a different use than that to which the other blocks were designed to be put, and from Bechtold's acts and declarations, which were admissible evidence, there was the plain inference capable of being drawn that he intended to dedicate the block to public use."  In most of the re-

ported cases of dedications arising by estoppel the plat or map of the town designated the square or block as a park, or other similar designation, and it has been uniformly held that the proprietor who had sold lots with reference to such plat was estopped to deny that he had dedicated such square to the public. These decisions rest upon the theory of implied representations, to purchasers of lots, that such squares or parks have been dedicated to the public. The following are some of the many authorities so holding: Poudler v. City of Minneapolis (Minn.) 115 N. W. 274; Watertown v. Cowen, 4 Paige (N. Y.) 510, 27 Am. Dec. 80; Fessler v. Town of Union, 67 N. J. Eq. 14, 56 Atl. 272; Attorney General v. Abbott, 154 Mass. 323, 28 N. E. 346, 13 L. R. A. 251; Sanborn v. City of Amarillo (Tex. Civ. App.) 93 S. W. 473; Archer v. Salinas City, 93 Cal. 43, 28 Pac. 839, 16 L. R. A. 145; Florida, etc., Ry. Co. v. Worley, 49 Fla. 297, 38 South. 618; Carter v. City of Portland, 4 Or. 340; City of Pella v. Scholte, 24 Iowa, 283, 95 Am. Dec. 729; Russell v. City of Lincoln, 200 Ill. 511, 65 N. E. 1088. The rule regarding dedication by estoppel with reference to streets applies equally to public squares and parks. Poudler v. City of Minneapolis, supra; Abbott v. Cottage City, 143 Mass. 521, 10 N. E. 325, 58 Am. Rep. 143, and cases cited. Florida, etc., Ry. Co. v. Worley, supra.

That oral representations, made by the proprietors of the town site to prospective purchasers of lots with reference to the character of such squares or parks, are sufficient upon which to base a dedication by estoppel there is no doubt. Such representations may be express or implied, and may be written or oral. This is firmly established by the authorities. Counsel for the appellants contend that Tolley was not authorized to make the representations which he made. There is no merit to such contention. The proof, shows that Casseday, Tolley, and Smith were partners in this townsite enterprise, and that Tolley represented such partnership in the sale of lots; he having particular charge thereof. While Casseday denies such authority, his testimony is entitled to but little weight, in view of the other testimony in the case, and the admissions and representations made by him to some of the plaintiffs.

It is also contended by appellants' counsel that there was no acceptance of the dedication of said block, and no user thereof by the public, and that the defendants at all times continued to exercise exclusive ownership and supervision over said block. We do

not think these contentions are borne out by the proof. No express acceptance by the public was necessary, as the foregoing authorities will show. When the plaintiffs purchased their lots in reliance upon the representations of Tolley, as most of them did, defendants became estopped to question a complete dedication of such square. While it is true, as the testimony discloses, that Tolley exercised certain supervision over said block, and made certain improvements thereon, in the way of planting trees, building a fence, etc., such acts were not necessarily inconsistent with a prior dedication thereof. In speaking upon this identical question the supreme court of Massachusetts, in Attorney General v. Abbott, supra, took occasion to say: "The fact that not much was done to adorn these spaces, and that the corporation itself did whatever was done in this respect, and to some extent it seemed to exercise a certain control over the land, is not of much weight in opposition to the conclusion to which we have come. The chief element of a public park, in such a place, at least till the village is well settled, is to have the land kept open. The adornment would naturally come later, if at all. The corporation did a little toward improving and caring for these open spaces. It had some interest in doing so. Ordinarily, when parks are established for public use, the municipal authorities exercised control over them. It was not so here. Whatever was done was done by the corporation, which, to some extent, did what municipal authorities usually do. Washb. Easem. 146, 147, 156. The corporation was interested in pushing its speculation; and, as long as it had many lots left for sale, it did something for the parks. * * *"

In conclusion we are entirely convinced that, by the clear preponderance of the evidence, and under the well-established rules of law applicable thereto, it must be held that the block in controversy was dedicated to the public by the townsite proprietors, as and for a public square or park, and further that the defendants are and should be estopped by their conduct and representations from denying such dedication. The defendants, other than Casseday, Tolley, and W. T. Smith, have acquired no rights in said property which interfere with the granting to the plaintiffs of the relief for which they pray. It is therefore ordered that the judgment appealed from be, and the same is hereby, affirmed. All concur.