In the Interest of R.N.

Donna BARD, Petitioner and Appellee,

v.

R.N., Respondent and Appellant.

Civ. No. 920325.

Supreme Court of North Dakota.

Nov. 24, 1992.

---

Gregory Ian Runge (argued), Bismarck, for respondent and appellant; appearance by R.N.

Richard James Riha (argued), Asst. State's Atty., Bismarck, for petitioner and appellee.

JOHNSON, Justice.

R.N. appeals from an order issued pursuant to N.D.C.C. § 25–03.1–21(2) which directed R.N. to be hospitalized for inpatient care at St. Alexius in Bismarck and from an order issued pursuant to N.D.C.C. § 25–03.1–34 which transferred R.N. from St. Alexius to the State Hospital in Jamestown. Recognizing the inherent contradictions in a process which combines the concerns of medical treatment with an adversary relationship in dealing with civil liberties, we affirm both decisions.

R.N. has been subject to a continuing treatment order since May 5, 1991. On January 10, 1992, the Burleigh County court issued an order for less restrictive treatment which released R.N. from the North Dakota State Hospital and allowed her to return to Bismarck. The treatment order, which adopted the recommendations of the Superintendent of the State Hospital, authorized case management at West Central Human Services Center (WCHSC), medication monitoring by a psychiatrist at WCHSC, periodic blood lithium level testing, and daily medication monitoring. R.N. has an extensive history of mental health proceedings including prior appeals to this Court. *See In the Interest of R.N.*, 453 N.W.2d 819 (N.D.1990); *In the Interest of R.N.*, 450 N.W.2d 758 (N.D.1990).

On September 28, 1992, Donna S. Bard, R.N.'s assigned case manager from WCHSC, moved the Burleigh County Court to modify R.N.'s treatment order on the grounds that R.N. refused to comply with the terms of the order and had made threats against Bard and others. On September 30, 1992, the court issued a modification order which directed that R.N. be hospitalized at St. Alexius Medical Center for inpatient treatment. In its findings of fact, the court stated that R.N. was delusional; was refusing all alternative treatment; was threatening others with physical harm; was unable to control her actions in the courtroom; and exhibited mood swings. On October 14th, St. Alexius sought to have R.N. transferred to the North Dakota State Hospital in Jamestown. After a hearing held on October 19, 1992, the court approved the transfer.

R.N. appeals from the order committing her to inpatient care at St. Alexius and from the order authorizing her transfer from St. Alexius to the State Hospital.[1]

R.N. argues that there was insufficient evidence to support the modification of the alternative treatment order. We disagree.

N.D.C.C. § 25–03.1–21(2) provides:

If the respondent is not complying with the alternative treatment order or the alternative treatment has not been sufficient to prevent harm or injuries that the

---

1. The first argument R.N. raises is that the court's initial order for less restrictive treatment, dated January 10, 1992, is an improper delegation of the court's authority and is vague. R.N., however, raises this argument for the first time on appeal. Since the issue was not raised at any of the hearings below, we decline to address it. *City of West Fargo v. Maring*, 458 N.W.2d 318, 319 (N.D.1990).

individual may be inflicting upon himself or others, the department, a representative of the treatment program involved in the alternative treatment order, the petitioner's retained attorney, or the state's attorney may apply to the court or to the county court of the different county in which the respondent is located to modify the alternative treatment order....

Under § 25–03.1–21(2), before a court may order hospitalization, it must find that: (1) the respondent is not complying with the terms of the alternative treatment order, or (2) the alternative treatment order has not been sufficient to prevent harm or injuries that the individual may be inflicting upon herself or others. The court's findings must be supported by clear and convincing evidence.[2] The trial court's determination is a finding of fact and will not be set aside on appeal unless it is clearly erroneous. N.D.R.Civ.P. 52(a).

Bard testified that R.N. refused to cooperate with medication monitoring and had not taken her medication since September 20th. Bard also stated that R.N. had missed appointments scheduled with WCHSC staff and made threats against Bard, her family, and anyone else who attempted to prescribe R.N. medicine. Bard testified that she sought the modification of R.N.'s treatment order because R.N.'s behavior was growing increasingly erratic.

Bard's testimony clearly indicates that R.N. was not complying with the terms of the treatment order which explicitly states R.N. must submit to medication monitoring and case management by WCHSC staff. The trial court approved the modification of R.N.'s treatment. As a result, R.N. was properly admitted to inpatient care at St. Alexius.

■ R.N. also contends there is insufficient evidence to support R.N.'s transfer from St. Alexius Medical Center in Bismarck to the State Hospital in Jamestown. R.N. asserts that since the treatment regimen at the State Hospital is the same at St. Alexius, her medical needs are not served by the transfer. R.N. also contends that St. Alexius had a duty to treat her and that the transfer was merely an attempt to get rid of a difficult patient. N.D.C.C. § 25–03.1–34(1) provides in relevant part:

1. The superintendent or director of a treatment facility may transfer, or authorize the transfer of, an involuntary patient from one hospital to another hospital or facility if the superintendent or director determines that it would be consistent with the medical needs of the patient to do so. In all such transfers, due consideration must be given to the relationship of the patient to family, legal guardian, or friends, so as to maintain relationships and encourage visits beneficial to the patient....

R.N.'s transfer is from one inpatient facility to another inpatient facility. In this regard, the patient, or the patient's guardian, has an opportunity to protest the transfer. Our only prior review of § 25–03.1–34(1) involved the transfer of a patient from outpatient treatment to an inpatient facility. *See In Interest of Cuypers*, 389 N.W.2d 812 (N.D.1986). In *Cuypers*, we held that the party attempting to transfer the patient from outpatient treatment to inpatient treatment at the State Hospital had to show by clear and convincing evidence that hospitalization is the least restrictive treatment. We equated the transfer to an involuntary commitment proceeding due to the more restrictive environment at the State Hospital. The rationale of *Cuypers* is inapplicable in this case as R.N.'s transfer is from inpatient facility to inpatient facility. Since R.N. was already

2. Due to the conflict between the need for treatment and civil liberties, trial courts must apply a clear and convincing evidentiary standard when considering involuntary commitment. *See In Interest of L.B.*, 452 N.W.2d 75 (N.D. 1990); *In Interest of Palmer*, 363 N.W.2d 401 (N.D.1985). Accordingly, a trial court considering hospitalization as a modification to a treatment order must find by clear and convincing evidence that: (1) the respondent is not complying with the terms of the alternative treatment order, *or* (2) the alternative treatment order is insufficient to prevent harm to the respondent or others. N.D.C.C. § 25–03.1–21(2). A preponderance of the evidence standard is appropriate where the trial court is considering inpatient transfers under § 25–03.1–34 since involuntary commitment is not an issue.

hospitalized, the trial court's role was to determine if there was a preponderance of evidence showing the transfer would be consistent with R.N.'s medical needs and that due consideration was given to R.N.'s relationship with family and friends. This evaluation must take into account the opinions of the mental health professionals charged with R.N.'s care. Dr. Santos testified that R.N.'s condition deteriorated at St. Alexius. While there she refused to take her medication or see local psychiatrists. Dr. Santos also testified that R.N.'s proximity to her family in Bismarck had not aided in her recovery. In addition, Dr. Santos testified the State Hospital has successfully treated R.N. in the past and returned her to the community in a short period of time. While the record indicates that St. Alexius sought the transfer a week after she was admitted, R.N. provides no evidence that the transfer was based on anything other than medical reasons. We conclude that Dr. Santos' testimony provides sufficient evidence to support R.N.'s transfer. The decisions of the trial court are affirmed.

ERICKSTAD, C.J., LEVINE and MESCHKE, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of VANDE WALLE, J., disqualified.