2003 ND 114

**In the Interest of K.P.**

**N.C. Trinidad, M.D., Petitioner and Appellee,**

v.

**K.P., Respondent and Appellant.**

No. 20030175.

Supreme Court of North Dakota.

July 16, 2003.

Thomas E. Merrick, Jamestown, ND, for respondent and appellant.

Leo A. Ryan, Special Assistant Attorney General, Jamestown, ND, for petitioner and appellee.

MARING, Justice.

[¶ 1] K.P. appeals from the May 16, 2003, order terminating the April 3, 2003, order for alternative treatment and directing K.P. be hospitalized until March 20, 2004. We affirm.

I

[¶ 2] On January 13, 2003, the district court ordered that K.P. be hospitalized and treated at the North Dakota State Hospital for 90 days. On March 18, 2003, a petition for continuing treatment was filed stating K.P.'s behavior had improved with current medications, K.P. was compliant with taking her medications, and K.P. was attending group therapy. The petition requested K.P. be released from the state hospital and, instead, undergo outpatient treatment with the Southeast Human Service Center ("SEHSC"). K.P. waived the right to a continuing treatment hearing, and on March 24, 2003, the district court ordered alternative treatment requiring that K.P. undergo outpatient treat-

ment at the SEHSC rather than hospitalization. The outpatient treatment at the SEHSC included medication monitoring, case management, psychiatric appointments, and vocational rehabilitation.

[¶ 3] On March 28, 2003, K.P. was readmitted to the state hospital after the SEHSC filed an application for emergency admission. In the application, the SEHSC stated K.P. had not been medication compliant since March 24, 2003, and had missed two appointments at the SEHSC. The application also described how K.P.'s family had called the SEHSC several times reporting that K.P. was isolating herself, was making phone calls at inappropriate times, and was paranoid and blaming. The application concluded that due to K.P.'s history, K.P. was considered to be a danger to herself or others.

[¶ 4] A hearing was held on April 2, 2003, to determine if the alternative treatment order required modification. On April 2, 2003, the district court entered an order requiring that K.P. be hospitalized until March 20, 2004. On April 3, 2003, the order was amended to correct the end date of the hospitalization to be until May 2, 2003. After that date, K.P. was to continue alternative outpatient treatment with the SEHSC until March 20, 2004. The alternative outpatient treatment was to consist of medication monitoring, psychiatric appointments, case management, and vocational rehabilitation.

[¶ 5] Another application to modify the alternative treatment order was filed on April 24, 2003. K.P. moved to dismiss the application because the same issues had been litigated at the April 2, 2003, hearing. After a hearing on April 29, 2003, the district court dismissed the application for modification.

[¶ 6] K.P. was released from the state hospital on Friday, May 2, 2003. K.P. was taken to the SEHSC and was given a two-day supply of medicine to get through the weekend. K.P. was then taken to her apartment. Arrangements were made for a SEHSC staff member to pick up K.P. at her apartment on Monday morning, May 5, 2003, and to transport K.P. to the SEHSC for her daily medication. When the SEHSC staff member arrived on Monday morning, K.P. would not come out of her apartment and refused to let the staff member inside. K.P. called the police indicating there was an intruder trying to break into her apartment. When the police arrived, K.P. would still not let anyone inside her apartment.

[¶ 7] SEHSC staff members decided to file an emergency application to get K.P. re-hospitalized because of K.P.'s non-compliance with the alternative treatment order and because she was a risk to herself or others. After being called by the SEHSC, the sheriff arrived and entered K.P.'s apartment. K.P. was found in the bathroom with a steak knife sitting on the sink next to her. K.P. threatened the SEHSC staff members and law enforcement officers who were present. K.P. was removed from the apartment and placed in the sheriff's vehicle for transport to the emergency room. While in the back seat, K.P. lit a match that had been in her coat pocket, burning a small hole in the seat. The emergency room records indicate K.P. also threatened the emergency room staff. K.P. was medicated and taken to the state hospital.

[¶ 8] A modification hearing was held on May 15, 2003. The district court found K.P. had not complied with the alternative treatment order and the alternative treatment order was not sufficient to prevent K.P. from harming herself or others. On May 16, 2003, the district court ordered the alternative treatment order terminated and K.P. hospitalized until March 20, 2004. K.P. appeals.

## II

[¶ 9] On appeal, K.P. argues that to modify an alternative treatment order due to lack of compliance with the order, the district court must find willful non-compliance. Because the district court did not find that K.P. was willful in her non-compliance with the alternative treatment order, K.P. asserts the district court erred by modifying the alternative treatment order. K.P. also argues that to modify an alternative treatment order on the basis of harm to the patient or another person, actual harm must be shown. K.P. asserts that because she did not actually harm or injure either herself or another person, the district court erred by modifying the alternative treatment order. We disagree with K.P.'s arguments.

## III

[¶ 10] Section 25–03.1–21(3), N.D.C.C., sets forth the procedure to be followed when the emergency detention of a patient is required. Neither party disputes the district court's finding of clear and convincing evidence to support K.P.'s emergency detention under N.D.C.C. § 25–03.1–21(3). Rather, K.P. challenges the modification of her alternative treatment order under N.D.C.C. § 25–03.1–21(2) which provides:

> If the respondent is not complying with the alternative treatment order or the alternative treatment has not been sufficient to prevent harm or injuries that the individual may be inflicting upon the individual or others, the department, a representative of the treatment program involved in the alternative treatment order, the petitioner's retained attorney, or the state's attorney may apply to the court or to the district court of a different judicial district in which the respondent is located to modify the alternative treatment order. The court shall hold a hearing within seven days after the application is filed. Based upon the evidence presented at hearing and other available information, the court may:
> a. Continue the alternative treatment order;
> b. Consider other alternatives to hospitalization, modify the court's original order, and direct the individual to undergo another program of alternative treatment for the remainder of the ninety-day period; or
> c. Enter a new order directing that the individual be hospitalized until discharged from the hospital under section 25–03.1–30. If the individual refuses to comply with this hospitalization order, the court may direct a peace officer to take the individual into protective custody and transport the respondent to a treatment facility.

[¶ 11] Under N.D.C.C. § 25–03.1–21(2), before the district court can modify K.P.'s alternative treatment order and require hospitalization, it must find either: (1) K.P. is not complying with the terms of the alternative treatment order; or (2) the alternative treatment order has not been sufficient to prevent harm or injuries that K.P. may be inflicting upon herself or others. *See In re R.N.*, 492 N.W.2d 582, 584 (N.D.1992). The district court's findings must be based upon clear and convincing evidence. *See id.* "The trial court's determination is a finding of fact and will not be set aside on appeal unless it is clearly erroneous." *Id.* (citing N.D.R.Civ.P. 52(a)). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is some evidence to support it, or if, although there is some evidence to support it, on the entire evidence, this Court is left with a definite and firm conviction a mistake has been made. *See*

*In re H.G.*, 2001 ND 142, ¶ 3, 632 N.W.2d 458. We conclude the district court's findings that K.P. was not complying with the alternative treatment order and that the alternative treatment order was not sufficient to prevent K.P. from harming herself or others are supported by sufficient evidence and are not clearly erroneous.

### A

[¶ 12] K.P. argues that to modify an alternative treatment order on the basis of non-compliance, there must be a finding of willfulness. We disagree. Section 25–03.1–21(2), N.D.C.C., authorizes the modification of an alternative treatment order when "the respondent is not complying with the alternative treatment order." The plain language of the statute does not require someone to have a specific level of intent when not acting in accordance with an alternative treatment order. Even in the context of criminal offenses, we have previously declined to read a requirement of willfulness into a statute that does not specifically call for it. *See State v. Eldred*, 1997 ND 112, ¶ 31, 564 N.W.2d 283 ("the willful culpability level will not be read into other chapters unless the legislature specifically states as such"); *In re E.B.*, 287 N.W.2d 462, 465 (N.D.1980).

[¶ 13] At the May 15, 2003, hearing, Amy Axtmann, a social worker and case manager at the SEHSC, testified that she met with K.P. on May 2, 2003, after K.P. was released from the state hospital. According to Axtmann, K.P. had already taken her medication for that day and was given a two-day supply of medication to take home with her for the weekend. Axtmann and K.P. also worked out arrangements for the weekdays, where someone from the SEHSC would pick up K.P. at her apartment, transport K.P. to the SEHSC for her daily medication, and then transport K.P. back to her apartment. Axtmann testified that she wrote down a two-week schedule for K.P., listing the times K.P. would be picked up and the names of the SEHSC staff member that would be picking up K.P. each day beginning on Monday, May 5, 2003.

[¶ 14] On Monday, May 5, 2003, the first day K.P. was to start her medication monitoring appointments at the SEHSC, Axtmann arrived at K.P.'s apartment to take her to the SEHSC. Axtmann testified that K.P. had locked herself in her apartment, was refusing to come out, and was refusing to let anyone in.

[¶ 15] At the time of this incident, the alternative treatment order that was in effect required K.P. to undergo medication monitoring, psychiatric appointments, case management, and vocational rehabilitation. Axtmann's testimony clearly indicates K.P. was not complying with the medication monitoring and case management portions of the alternative treatment order. *See R.N.*, 492 N.W.2d at 584.

[¶ 16] In addition, K.P. made it clear in her testimony that she will not cooperate with the SEHSC in receiving outpatient treatment. The alternative treatment order required that K.P. cooperate with SEHSC for medication monitoring and case management.

[¶ 17] At the modification hearing on May 15, 2003, the cross-examination of K.P. went as follows:

Q. [K.P.], are you familiar with the Alternative Treatment Order in place?

A. I do not want to be a client with Southeast Human Services with all the violence and abuse I received from that center. I'm intending to move back to my home where I'm treated fairly. In North Dakota I can't get anything fair. They are trying to take away my apartment

by making me move into a residential treatment—

Q. Are you familiar with the Alternative Treatment Order that's in place?

A. I no longer want to be a client at Southeast Human Services. It was Dr. Pryatel that got me on a good medical regimen—

. . . .

Q. Are you familiar with the Alternative Treatment Order that's in place right now?

A. I'm not familiar with it totally because Dr. Pryatel doesn't explain anything to me.

Q. Are you aware that the current order that's in place requires you to receive treatment through Southeast Human Services Center?

A. I'm aware of it but I've been very unhappy how I've been treated as a client, as a patient, as a person who's been harassed and forced out of my home four different times in the last seven months because they think they know so much about mental health—

. . . .

Q. Are you aware that part of that order requires you to receive treatment through the Southeast Human Service Center to include medication monitoring?

A. I would be very happy to have medication monitoring at the Lakeland Mental Health Center in south Moorhead. I will not be associated at Southeast Human Service Center any longer. I'm not going to have North Dakota be my permanent place of residence after the treatment I've received in the last seven months.

Q. And is it true that you indicated to the Court at a previous hearing it wasn't your plan to cooperate with the Southeast Human Services?

A. Not after what they put me through, no, when they put me in four point restraints.

Q. Just so we're clear, you, even before this incident, you testified at a hearing that it wasn't your plan to cooperate with Southeast Human Services?

A. Not after—not when they've been abusive toward me. They've been abusive to me as a patient, a client. They've been condescending. They've been subjecting me to—

Q. And don't let me put words in your mouth, if my recollection is incorrect, was your testimony previous to this, to your release from the hospital, was it your testimony that you might cooperate with the Human Service Center if they acted on your terms?

A. Now I will no longer cooperate with them after what they put me through.

[¶ 18] We conclude there is sufficient evidence to support the district court's finding that K.P. was not following the alternative treatment order. The district court's decision to modify the alternative treatment order was not clearly erroneous.

B

[¶ 19] Additionally, the testimony at the May 15, 2003, hearing indicates the alternative treatment order was not sufficient to prevent K.P. from harming herself or others.

[¶ 20] We reject K.P.'s interpretation that N.D.C.C. § 25–03.1–21(2) requires actual harm before an alternative treatment order can be modified. In the context of

issuing an initial involuntary treatment order, we have stated overt violent action is not a prerequisite to finding that a person poses a serious risk of harm to himself or others. *See In re D.Z.*, 2002 ND 132, ¶ 9, 649 N.W.2d 231. If actual harm is not needed to hospitalize someone initially, it should not be needed to re-hospitalize someone after unsuccessful alternative treatment. To hold otherwise would result in a situation where hospitals would be reluctant to release patients for alternative treatment. This would be contrary to the legislative intent of N.D.C.C. § 25–03.1–21, which is written to ensure that less restrictive forms of treatment are considered as alternatives to hospitalization. *See D.Z.*, at ¶ 10.

[¶ 21] Axtmann described K.P.'s condition upon entering K.P.'s apartment on May 5, 2003:

> When I did finally see her face-to-face she was sitting in the bathroom with a knife on the sink next to her. She was screaming and belligerent and was threatening to hurt myself, the other people in the room, threatening to hurt the police officer, very agitated, very upset, border line incoherent.
>
> . . . .
>
> . . . She was threatening to take out a hit on me. She was going to kill me. She was going to kill everyone around her. She was going to press charges. We were raping her. We were taking away her civil rights. She wasn't sick. She wasn't mentally ill. We were making her sick. She didn't need medication. Threatening to hurt the people at the Southeast Human Service Center, the police officers.

[¶ 22] These threats to harm others, especially those made while she had a steak knife next to her on the bathroom sink, support the district court's conclusion that the alternative treatment order has not been sufficient to prevent harm K.P. may be inflicting upon others.

[¶ 23] Axtmann also testified that after K.P. was placed in the sheriff's vehicle for transport to the emergency room, K.P. lit a match that was in her coat pocket, burning a small hole in the back seat of the vehicle. This fact also supports the conclusion that the alternative treatment has not been sufficient to prevent harm to K.P. and others. *See In re Nyflot*, 340 N.W.2d 178, 184 (N.D.1983) (concluding that even if she did not intend to cause harm to herself or others, a patient who set two fires in the women's bathroom to protest against being institutionalized presented a serious risk of harm to herself and to others).

[¶ 24] Finally, at the May 15, 2003, hearing, Dr. William Pryatell, a psychiatrist at the state hospital, and Axtmann both testified that in their opinion, the alternative treatment order is not sufficient to prevent K.P. from inflicting harm on herself or others. According to Dr. Pryatell, the alternative treatment order is not sufficient to prevent harm because:

> [K.P.] just doesn't get it, she doesn't, really, and accept the fact that she has mental illness and needs to take medication, so it's the same pattern repeated again and again. She'll go out in the community and not take the medication, relapse really quickly and so the same thing here. She's very oppositional towards authority figures, doesn't want to do whatever the authority figure will tell her.

[¶ 25] We conclude the district court's decision to modify the alternative treatment order was not clearly erroneous. We affirm the district court's May 16, 2003, order.

[¶ 26] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

KAPSNER, Justice, concurring.

[¶ 27] I concur. I write separately to note an inconsistency with the applicable statute, an issue not raised or argued by the respondent and, therefore, not addressed in the majority opinion.

[¶ 28] The Hospitalization Order Following Alternative Treatment Order entered on May 16, 2003, provided "the above named Order for Alternative Treatment shall terminate, and the Respondent shall be hospitalized in the North Dakota State Hospital at Jamestown, North Dakota, until March 20, 2004 the remainder of the statutory one year period, or until further order of the Court." The applicable statute, when a patient is not compliant and a modification of an alternative treatment order is sought, provides the court may "[e]nter a new order directing that the individual be hospitalized until discharged from the hospital under section 25–03.1–30." N.D.C.C. § 25–03.1–21(2)(c).

[¶ 29] The May 16, 2003, order indicates K.P. shall be hospitalized to a date certain, unless the court enters a further order. Section 25–03.1–30(2), N.D.C.C., however, states the director of a treatment facility "shall discharge a patient hospitalized by court order when the patient's mental condition is such that the patient no longer is a person requiring treatment." The section also provides that when a patient is hospitalized and the director determines "a less restrictive form of treatment would be more appropriate for a patient hospitalized by court order," the director may petition the court to modify its prior order for hospitalization. N.D.C.C. § 25–03.1–30(6). Neither the statutory discretion to seek an order for alternative treatment when hospitalization appears not to be needed nor the statutory obligation to discharge a patient who is no longer a person requiring treatment is superseded by the language of the order entered in this case. Either action could be taken before the termination date stated in the order, should appropriate circumstances develop.