2004 ND 52

**In the Interest of K.P.**

**William Pryatel, M.D., Petitioner and Appellee**

v.

**K.P., Respondent and Appellant.**

**No. 20040049.**

Supreme Court of North Dakota.

March 10, 2004.

Kenneth L. Dalsted, Special Assistant Attorney General, Jamestown, for petitioner and appellee.

Thomas E. Merrick, Jamestown, for respondent and appellant.

SANDSTROM, Justice.

[¶ 1] K.P. is appealing from a Southeast Judicial District Court order denying change of venue and from an order terminating alternative treatment and ordering K.P. to be hospitalized in the North Dakota State Hospital at Jamestown, North Dakota, until March 20, 2004, or until further court order. K.P. argues the district court abused its discretion in denying her motion for a change of venue. K.P. also argues the district court erred in determining she was not complying with a court order for less restrictive treatment and in determining this alternative treatment was insufficient to prevent harm or injury to herself or others.

I

[¶ 2] K.P. has schizoaffective disorder, which involves a cycling mood condition. She has been in and out of the North

Dakota State Hospital in Jamestown since January 13, 2003. K.P.'s hospitalization history prior to this appeal is discussed in *Interest of K.P.*, 2003 ND 114, ¶¶ 2–8, 665 N.W.2d 65. The facts relevant to this appeal are as follows.

[¶ 3] On May 16, 2003, K.P. was ordered hospitalized until March 20, 2004. On November 5, 2003, the district court ordered less restrictive treatment and required K.P. to undergo treatment through the Southeast Human Service Center ("SEHSC") until March 20, 2004. The outpatient treatment required medication monitoring and compliance at the SEHSC through Dr. Elizabeth Faust, K.P.'s psychiatrist, and Amy Axtmann, K.P.'s SEHSC case manager.

[¶ 4] On November 5, 2003, K.P. was released from the State Hospital. On January 9, 2004, because of reported behavior and an incident involving a scalpel, K.P. was taken into custody and detained at MeritCare Hospital in Fargo, North Dakota. An application for emergency admission was filed. On January 12, 2004, she was transported to the State Hospital, where her detention continued. Notice of her detention was filed, and a hearing to modify her alternative treatment order was scheduled to take place by interactive television ("ITV"). K.P. objected to the modification hearing's being held by ITV. On January 13, 2004, K.P. moved for a change of venue. On January 13, 2004, following a telephonic hearing, the motion was denied. On January 14, 2004, a hearing was held regarding the modification of K.P.'s alternative treatment plan.

[¶ 5] At the hearing, Amy Axtmann, K.P.'s primary case manager, testified that upon initial release from the State Hospital, K.P. was in compliance with the court order and was doing well. She testified that on November 21, 2003, she received a call from staff at the transitional living facility where K.P. was residing, reporting that K.P. was rude, more irritable, and more caustic toward staff and was not "redirectable." Axtmann testified she spoke with Dr. Faust and a decision was made to increase K.P.'s medication. She testified that K.P. was willing to increase her medication and that she noticed a decrease in symptoms.

[¶ 6] Axtmann also testified that on December 18, 2003, she received another phone call from the staff at the transitional living facility. She testified that the staff reported K.P. was exhibiting bizarre behaviors. She testified she met with K.P. and saw that K.P. was using her oven for heat. She testified that K.P. agreed to be more cooperative and to allow staff to enter her apartment to monitor her.

[¶ 7] Axtmann also testified that on December 24 and 25, 2003, K.P. was authorized to go on a 24–hour pass. She testified K.P. agreed to take her medication prior to leaving the transitional living facility and to take her medication during the time she would be gone. Axtmann testified that when she went to see K.P. on December 29, 2003, K.P. told her she had taken a "med holiday" because she felt she was overmedicated and did not want the medications. Axtmann testified they discussed the fact that 100 percent medication compliance was a condition of K.P.'s being in the community and K.P. agreed to comply. Axtmann testified K.P. admitted she did not take her medication and had missed a total of three doses.

[¶ 8] Axtmann also testified that on January 2, 2004, she met with K.P. She testified that K.P. was belligerent, unredirectable, and argumentative with her and with the staff at the transitional living facility. She testified she met with Dr. Faust and a decision was made to again increase K.P.'s medication. She testified K.P. refused the increase in medication.

[¶ 9] Axtmann also testified that on January 5, 2004, she was contacted by the staff at the transitional living facility because K.P. was again using her oven for heat, acting belligerently, and showing signs of increased irritability. She testified that after she twice talked with K.P., K.P. agreed to increase her medication and to allow staff to come into her apartment.

[¶ 10] Also at the hearing, Dr. Elizabeth Faust, K.P.'s psychiatrist, testified K.P.'s medication was increased in November as a result of an abrupt deterioration in her condition. She testified there was a sudden exacerbation of K.P.'s symptoms again in December. She testified that around Christmastime, K.P. was not in compliance with her medication and they had not been able to stabilize her since then. She testified they increased K.P.'s medication for a second time on January 2, 2004, hoping to stabilize K.P., but it did not work.

[¶ 11] Also at the hearing, Elizabeth Gravalin, a licensed practical nurse ("LPN") employed with SEHSC, testified she received a phone call on January 9, 2004, at 11:45 a.m. from Cass County Social Services ("Social Services") in Fargo. She testified that a person at the Social Services office reported K.P. was in their basement and that in view of K.P.'s behavior, a decision was made to assess the situation and consider emergency commitment. She testified she requested Fargo Police Department backup because past experience demonstrated that K.P. becomes belligerent and violent when presenting in this manner.

[¶ 12] Gravalin testified that when she arrived at the Social Services office, K.P. had left and was walking rapidly down the street. Gravalin and the police officer approached K.P. and informed her that a call had been received from Social Services and that because of her reported behavior

and her actions at that time, they were looking at readmitting her to the hospital. She testified K.P. was belligerent and irate. She also testified that K.P. yelled at the police officer and at her. She testified that while the officer was trying to coax K.P. into his vehicle, she struggled away and ran up the hood of the police car. She testified that the police officer grabbed K.P. by the back of her coat and that K.P. yelled, screamed, and fought. She testified K.P. then pulled a medical scalpel out of her pocket. K.P. was taken to the MeritCare Hospital emergency room.

[¶ 13] The district court found K.P. had not complied with the terms of the alternative treatment order and the alternative treatment order had not been sufficient to prevent K.P. from inflicting harm or injury upon herself or others. The district court terminated the order for alternative treatment and ordered K.P. hospitalized at the State Hospital until March 20, 2004.

[¶ 14] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06 and 25–03.1–03. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. §§ 28–27–01 and 25–03.1–29.

## II

■ [¶ 15] On appeal, K.P. argues the district court abused its discretion in denying her motion for a change of venue.

[¶ 16] Rule 39.1, N.D.R.Civ.P., provides, in part:

(b) Change of Venue.

(1) The court may change the venue of an action or proceeding to another county within or outside a judicial district if:

(A) the county designated in the complaint is not the proper county of venue;

(B) there is reason to believe an impartial trial cannot be obtained in the county of venue; or

(C) the convenience of witnesses and the ends of justice will be promoted by the change.

(2) If venue is changed, the file must be transferred to the new county of venue and any additional papers must be filed in the new county of venue. If venue is changed to a county in a different judicial district, a new judge must be assigned to the action. In the case of a jury trial, the jury panel must be composed of residents of the new county of venue or residents of the judicial district as provided by N.D.C.C. § 27–09.1–05.1.

[¶ 17] K.P. argues the district court erred in denying her motion, because Stutsman County was not the proper county of venue. Because K.P. was taken into custody and detained, N.D.C.C. § 25–03.1–21(3) applies in this case.

[¶ 18] Section 25–03.1–21(3), N.D.C.C., provides:

If a peace officer, physician, psychiatrist, clinical psychologist, or any mental health professional reasonably believes that the respondent is not complying with an order for alternative treatment or that the alternative treatment is not sufficient to prevent harm or injuries to the respondent or others, and that considerations of time and safety do not allow intervention by a court, the designated professional may cause the respondent to be taken into custody and detained at a treatment facility as provided in subsection 3 of section 25–03.1–25 and, within twenty-four hours, shall file a notice with the court stating the circumstances and factors of the case. The state hospital or public treatment facility must immediately accept, and a private treatment facility may accept, the respondent on a provisional basis.

The superintendent or director shall require an immediate examination of the respondent and, within twenty-four hours after admission, shall either release the respondent subject to the conditions of the original order or file a notice with the court stating in detail the circumstances and factors of the case. The court shall, within forty-eight hours of receipt of the notice of the superintendent or director, after a hearing and based on the evidence presented and other available information:

a. Release the individual from hospitalization and continue the alternative treatment order;

b. Consider other alternatives to hospitalization, modify its original order, and direct the individual to undergo another program of alternative treatment for the remainder of the commitment period; or

c. Enter a new order directing that the respondent remain hospitalized until discharged from the hospital under section 25–03.1–30.

[¶ 19] K.P. argues this statute, although requiring that notice be filed with the court, does not specify with which court notice should be filed. At the venue hearing, K.P. argued that although the statute does not specify which court, the statute probably means the court that issued the last order. The district court also found N.D.C.C. § 25–03.1–21(3) clearly refers to the court where the order was entered.

[¶ 20] The district court did not err in reading this statute to allow filing of the notice with the court whose order is being violated. The statute gives a remedy for failing to comply with a court order for alternative treatment. When this remedy is used, the statute requires that notice be filed with the court. The original order

for hospitalization was entered on April 2, 2003, in the district court in Stutsman County. The order for less restrictive treatment was entered on November 5, 2003, also in the district court in Stutsman County. The notice of detention required by N.D.C.C. § 25–03.1–21(3) was filed in Stutsman County. There is nothing in N.D.C.C. § 25–03.1–21(3) that indicates a court other than the one that entered the alternative treatment order should have venue or receive notice of detention. As such, the district court did not abuse its discretion in determining that Stutsman County was the proper county of venue.

[¶ 21] K.P. also argues that even if Stutsman County was the proper county of venue, the interests of justice and convenience of the witnesses required venue to be changed to Cass County.

[¶ 22] A motion for a change of venue on these grounds is addressed to the sound judicial discretion of the trial court. *Flattum–Riemers v. Flattum–Riemers*, 2003 ND 70, ¶ 19, 660 N.W.2d 558. The district court's decision will not be reversed on appeal unless the court has abused its discretion. *Id.* "A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law." *Langness v. Fencil Urethane Systems, Inc.*, 2003 ND 132, ¶ 9, 667 N.W.2d 596. Abuse of discretion is never assumed. *Jundt v. Jurassic Resources Development*, 2003 ND 9, ¶ 10, 656 N.W.2d 15. Facts that affirmatively establish a change of venue is warranted must be produced by the party seeking a change of venue. *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 9, 603 N.W.2d 896. The party moving for a change of venue must show that the convenience of witnesses and the ends of justice would be promoted by the change. *Flattum–Riemers*, at ¶ 19.

[¶ 23] At the change of venue hearing, K.P. stated it would not be easy to get her witness to the hearing but no attempt had yet been made. K.P. argues the convenience of witnesses and the promotion of the ends of justice were denied because her only witness testified by telephone. Relying on *Interest of Gust*, 345 N.W.2d 42 (N.D.1984), K.P. argues that requiring her witness to testify by telephone denied her the use of a witness on her own behalf. In *Gust*, we held that "in testimony by telephone the trier of facts is put in a difficult, if not impossible, position to take into account the demeanor of the witness in determining the witness' credibility." *Id.* at 45. We concluded that "witnesses in [ ] involuntary commitment proceedings under NDCC Ch. 25–03.1 must be present in court to present oral testimony unless all the principal parties, including the respondent, with the court's approval, agree otherwise." *Id.*

[¶ 24] K.P. did not make these arguments regarding her witness's testifying by telephone either in her brief in support of the motion for a change of venue or at the change of venue hearing itself. Further, during the modification hearing, the court again discussed her concerns regarding venue, but she did not object to her witness's testifying by telephone. K.P. may not raise this issue for the first time on appeal. *Mahoney v. Mahoney*, 1997 ND 149, ¶ 13, 567 N.W.2d 206.

[¶ 25] K.P. has not shown how she was prejudiced by having her witness testify by telephone, nor has K.P. shown how changing venue would have promoted convenience of the witnesses or the ends of justice. Because K.P. has failed to present any proof that the ends of justice and the convenience of witnesses would have been

promoted by a change of venue, we conclude the district court did not abuse its discretion in denying the motion for change of venue.

## III

[¶ 26] K.P. is challenging the district court's decision to modify her alternative treatment order. Before the district court could modify K.P.'s alternative treatment order and require hospitalization, it had to find K.P. was not complying with the terms of the alternative treatment order or the alternative treatment order was not sufficient to prevent K.P. from inflicting harm or injuries upon herself or others. *See Interest of K.P.*, 2003 ND 114, ¶ 11, 665 N.W.2d 65; *see also* N.D.C.C. § 25–03.1–21(2). Section 25–03.1–21(2), N.D.C.C., provides:

If the respondent is not complying with the alternative treatment order or the alternative treatment has not been sufficient to prevent harm or injuries that the individual may be inflicting upon the individual or others, the department, a representative of the treatment program involved in the alternative treatment order, the petitioner's retained attorney, or the state's attorney may apply to the court or to the district court of a different judicial district in which the respondent is located to modify the alternative treatment order. The court shall hold a hearing within seven days after the application is filed. Based upon the evidence presented at hearing and other available information, the court may:

a. Continue the alternative treatment order;

b. Consider other alternatives to hospitalization, modify the court's original order, and direct the individual to undergo another program of alternative treatment for the remainder of the ninety-day period; or

c. Enter a new order directing that the individual be hospitalized until discharged from the hospital under section 25–03.1–30. If the individual refuses to comply with this hospitalization order, the court may direct a peace officer to take the individual into protective custody and transport the respondent to a treatment facility.

[¶ 27] "The district court's findings must be based upon clear and convincing evidence." *Interest of K.P.*, 2003 ND 114, ¶ 11, 665 N.W.2d 65. The appropriate standard of review for findings of fact is clearly erroneous. *Id.*

A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is some evidence to support it, or if, although there is some evidence to support it, on the entire evidence, this Court is left with a definite and firm conviction a mistake has been made.

*Id.*

[¶ 28] K.P. argues the district court erred in finding she had not been complying with the terms of the alternative treatment order. She argues her noncompliance in having missed three doses of medication was not sufficient to allow modification. She argues this noncompliance is distinguishable from the noncompliance found in *Interest of K.P.*, 2003 ND 114, 665 N.W.2d 65, and *Interest of R.N.*, 492 N.W.2d 582 (N.D.1992). In her earlier case, K.P. had refused contact with her case manager, had refused transportation to receive medication, and had refused treatment through SEHSC. *K.P.*, at ¶¶ 13–16. In *R.N.*, R.N. had refused to cooperate with medication monitoring, had not taken medication for a considerable length of time, and had missed scheduled appointments with human service center staff. 492 N.W.2d at 584.

[¶ 29] Section 25–03.1–21(2), N.D.C.C., does not require a specific level of noncompliance with the alternative treatment order. The statute requires only noncompliance. Axtmann testified K.P. failed to take three doses of medication during her 24–hour pass at Christmastime. Axtmann testified K.P. admitted she had not taken her medication and had taken a "med holiday" because she felt she was overmedicated. Axtmann also testified K.P. refused an increase in medication from January 2 through January 5, 2004. Dr. Faust also testified K.P. was noncompliant in taking her medication over Christmastime. Furthermore, both Faust and Axtmann testified they were not sure whether K.P. was taking her medication, because she was showing breakthrough symptoms. Dr. Faust testified she believed there was covert noncompliance. K.P.'s alternative treatment order required medication compliance.

[¶ 30] We conclude there was sufficient evidence to support the district court's finding K.P. was not following the alternative treatment order. Even if we were to conclude K.P. had complied with the treatment order, the district court also found the alternative treatment was insufficient to prevent harm or injury to K.P. or others.

[¶ 31] K.P. argues this finding of fact is clearly erroneous because the district court failed to consider evidence that her actions in the encounter with the police officer and Gravalin were justified by the law. She argues that because Gravalin is not a mental health professional as defined in N.D.C.C. § 25–03.1–02(10), there was no authority to cause K.P. to be taken into custody under N.D.C.C. § 25–03.1–21(3) and to be detained at a treatment facility. She argues that because her detention was directed by someone acting without authority, it is likely that any force used by the officer was excessive and thus her resistance to an unwarranted seizure was justified. During trial, K.P. questioned Gravalin about the emergency detention; however, she did not argue to the district court that her actions were justified because of an unauthorized detention.

[¶ 32] Section 25–03.1–21(3), N.D.C.C., sets forth the procedures to be filed when emergency detention of a patient is required. The district court made no findings regarding whether K.P.'s detention complied with the statute. Although N.D.C.C. § 25–03.1–21(3) does not authorize an LPN to take custody of and detain a person, the statute provides a police officer has that authority if the officer reasonably believes either 1) the respondent is not complying with an order for alternative treatment or 2) the alternative treatment is not sufficient to prevent harm or injuries to the respondent or others.

[¶ 33] In this case, Gravalin and the police officer approached K.P. to assess the situation. They told K.P. they were considering rehospitalization. It was the police officer, however, who detained K.P. and brought her to the emergency room. Although the LPN directed that K.P. be detained, it can be inferred that she apprised the officer of the situation and that he had reason to know K.P. was not complying with the alternative treatment order. Further, for K.P.'s argument to be valid, she would have to show she believed the officer was not authorized to detain her. K.P. did not testify she believed the officer was acting without authority, nor did she present any evidence to show she believed the officer was acting without authority. We conclude the police officer had authority to detain K.P. and bring her into custody and the district court did not err in failing to consider whether her actions were justified.

◼ [¶ 34] K.P. does not argue the court had insufficient evidence to find the alternative treatment order failed to prevent K.P. from harming herself or others. Nonetheless, testimony at the trial indicates the alternative treatment order was not sufficient to prevent K.P. from harming herself or others. Gravalin testified that when she and the police officer approached K.P., K.P. was belligerent and irate. She testified K.P. yelled, screamed, and fought. She testified that K.P. then reached into her right coat pocket and pulled out a medical scalpel. She testified the officer placed K.P. on the ground and put his knee in her back while K.P. continued to hang onto the scalpel. She testified the officer had to bang K.P.'s wrist on the road to get her to release the scalpel. Axtmann testified that because of this incident, she felt the alternative treatment order was insufficient to prevent harm to K.P. or others.

[¶ 35] Dr. Faust testified K.P. has a history of attempting to be violent with others, especially when people are trying to hospitalize her. She also testified that K.P. is unable to recognize she is ill or getting more ill and that she projects her difficulties or circumstances on other individuals and doesn't realize she is getting into trouble. She testified the police incident was consistent with this pattern.

[¶ 36] We conclude the incident involving the medical scalpel supports the district court's conclusion that the alternative treatment order is not sufficient to prevent K.P. from inflicting injury or harm to herself or others at this time.

### IV

[¶ 37] We affirm, concluding the district court's decision to modify the alternative treatment order was not clearly erroneous.

[¶ 38] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.