2004 ND 97

Melvin TIBERT, Mark Tibert,
Cathy Tibert, and Suzi
Tibert, Plaintiffs

Melvin Tibert, Mark Tibert, and Suzi
Tibert, Plaintiffs and Appellants

v.

CITY OF MINTO, a Municipal Corpora-
tion, Bill Slominski, and Kathy Slo-
minski, D/B/A Minto Grain LLC, De-
fendants and Appellees.

No. 20030207.

Supreme Court of North Dakota.

May 5, 2004.

David C. Thompson (argued), Grand Forks, N.D., for plaintiffs and appellants.

Nicholas B. Hall of Hodny Currie Lawyers, Grafton, N.D., and Ronald F. Fischer of Pearson Christensen, Grand Forks, N.D., for defendant and appellee City of Minto; submitted on brief.

Scott J. Landa of Zimney Foster, P.C., Grand Forks, N.D., for defendants and appellees Bill and Kathy Slominski and Minto Grain, LLC; submitted on brief.

NEUMANN, Justice.

[¶ 1] Melvin and Cathy Tibert and Mark and Suzi Tibert (collectively known as "Tiberts") appeal from the trial court's judgment dismissing their action against the City of Minto, Bill and Kathy Slominski, and Minto Grain, LLC, for declaratory relief. We affirm.

I

[¶ 2] Minto Grain is located at Minto, North Dakota, adjacent to railroad tracks used by Burlington Northern Santa Fe Railroad ("BNSF"), the successor of Burlington Northern Railroad. Minto Grain is a grain storage facility that was previously owned by Minto Farmer's Elevator. Bill and Kathy Slominski assumed operation of Minto Grain in 1999, and they purchased the facilities in January 2000. At that time, the facilities were located on property comprising a railroad right of way owned by BNSF or its predecessors and leased to the operators of the facility. In January 2001, BNSF conveyed two parcels of the right of way to the Slominskis by quit-claim deed, reserving certain roadway easements and mineral rights. The Tiberts own residential property adjacent to one of those parcels in Minto.

[¶ 3] Since at least 1980, a road once called Elevator Road and now known as Kilowatt Drive, has existed along the eastern portion of the two Minto Grain parcels. Kilowatt Drive also partially lies on a railroad right of way owned by persons not joined in this action. Elevator Road, now Kilowatt Drive, was commonly used by the public and the Tiberts to access Minto Grain, railroad property, other businesses, and residential properties.

[¶ 4] On June 2, 1980, the City proposed an ordinance to establish Elevator Road as a city street and rename it Kilowatt Drive. The ordinance was passed on July 7, 1980. However, the trial court found the City failed to take any further action in compliance with statutory requirements for the opening of a public street. Despite this failure, the City erected street signs, placed water and sewer

lines along the street, and maintained at least a portion of Kilowatt Drive through snow removal and occasional maintenance. Residences along Kilowatt Drive were assigned addresses, which allowed delivery and emergency services to accurately locate the homes.

[¶ 5]   A portion of Kilowatt Drive crosses a bridge over the Harriet Drain.  On July 11, 1980, a bridge maintenance agreement was executed among the City, Walsh County, and Walsh County Water Management.  On August 4, 1980, the City's mayor reported the bridge would be maintained by Walsh County and the Walsh County Water Management District.  On August 5, 1980, Walsh County Board of Commissioners decided that Walsh County would assume future bridge maintenance. On December 2, 1980, Burlington Northern Railroad conveyed its ownership in the bridge to Walsh County through a donation bill of sale.  The stated purpose of the conveyance was "for the continued use, operation, and maintenance in the interest of the public, forever."  According to the trial court, there is no evidence showing any other portions of Kilowatt Drive were conveyed to the City or Walsh County.

[¶ 6]   The Tiberts sued the City and Minto Grain in October 2001, seeking a declaration that Kilowatt Drive is a public street.  The Tiberts claimed BNSF made a common-law dedication of the railroad right of way over which Kilowatt Drive is situated before it conveyed the property to the Slominskis.  On October 30, 2002, Minto Grain gave a perpetual easement across the portions of the two parcels comprising Kilowatt Drive to the City of Minto.  The purpose of the easement was to allow public ingress and egress to the Kilowatt Drive area and to "foster commerce along the rail, limit the non-commercial use of the roadway by the public, and provide general access to residences . . . ."

[¶ 7]   Following a bench trial, on May 12, 2003, the trial court dismissed the Tiberts' action.  The trial court found the Tiberts failed to show, by clear and convincing evidence, that Kilowatt Drive was established by the conduct of Minto Grain and its predecessors or BNSF and its predecessors.  Specifically, the trial court found Kilowatt Drive was never statutorily established or dedicated as an official city street.  The trial court also held the Tiberts' action moot, finding Minto Grain's October 2002 perpetual easement provided essentially the same relief the Tiberts would acquire if the trial court determined there was a statutory or common-law dedication.  The trial court further found Bill and Kathy Slominski were entitled to a judgment of dismissal because no cognizable claim had been established against them.  The Tiberts appeal.

II

[¶ 8]   On appeal, the Tiberts argue the trial court erred in finding there was no justiciable controversy because the perpetual easement between Minto and Minto Grain rendered the Tiberts' issue moot. The Tiberts contend the easement granted by Minto Grain to the City of Minto is not equivalent to an easement held in trust for the public for purposes of a public street.

[¶ 9]   When a trial court dismisses a case for mootness, we review the factual findings under the clearly erroneous standard set forth in Rule 52(a), North Dakota Rules of Civil Procedure.  *See Syversen v. Hess*, 2003 ND 118, ¶ 9, 665 N.W.2d 23.  However, a trial court's legal conclusion of mootness is reviewed *de novo.  See Minnesota Humane Soc'y v. Clark*, 184 F.3d 795, 797 (8th Cir.1999) (holding, "[w]e review a dismissal for mootness *de novo* "); *State v. Utvick*, 2004 ND 36, ¶ 31, 675 N.W.2d 387 (noting, "[w]hile we do not conduct a *de novo* re-

view of the findings of fact, questions of law are fully reviewable"); *see also St. Louis Firefighters Ass'n v. City of St. Louis*, 96 F.3d 323, 329 (8th Cir.1996) (stating, "[w]e review the district court's dismissal for mootness *de novo*").

[¶ 10] A trial court properly dismisses a case for mootness if the case "has lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law." *St. Louis Fire Fighters Ass'n*, 96 F.3d at 329. While voluntary cessation of the alleged conduct does not make the case moot, the case is moot when "there is no reasonable expectation that the alleged violation will recur, and ... interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* When this occurs, "neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law." *Id.*

[¶ 11] The trial court erred in finding the easement created essentially the same relief the Tiberts were seeking. The newly-created easement is more limited than if the trial court were to declare a public dedication of Kilowatt Drive.

Unless there are reservations, the general public, that is to say any and every one, has the right to use dedicated property to the full extent to which such easements are commonly used.... Whatever use of the dedicated land as is fairly within the terms of the dedication and reasonably serves to fit the land for enjoyment by the public in the manner contemplated is authorized.

C.J.S. *Dedication* § 73, 383–84 (2001). Kilowatt Drive was commonly used as a public street allowing members of the public, including the Tiberts, to gain access to the various businesses and homes in the area along Kilowatt Drive. Under the terms of the easement, this access may now be restricted. The stated goal of the newly-created easement is to "limit the non-commercial use of the roadway by the public." Although the easement purports to allow access to residences, Minto Grain has reserved the right to close Kilowatt Drive for specified periods at its discretion. We hold the trial court erred in concluding the Tiberts' case was moot.

### III

[¶ 12] The Tiberts argue the trial court erred in determining there was no clear and convincing evidence of BNSF and its predecessors' common-law dedication of Kilowatt Drive. The Tiberts argue a public roadway was established by BNSF and its predecessors' actions, which amounted to an implied dedication, resting on or including and incorporating the principles of estoppel *in pais*.

[¶ 13] "In a dedication, the private landowner intentionally appropriates land for public use." *Brown v. Bd. of Co. Commissioners for Pennington Co.*, 422 N.W.2d 440, 442 (S.D.1988). A dedication may be either express or implied,[1] and an express dedication is completed by a deed or a written instrument. *Carlson v. Burkhart*, 271 Kan. 856, 27 P.3d 27, 32 (2001). A dedication is generally established through common law or statutory law. *See Cole v. Minnesota Loan & Trust Co.*, 17 N.D. 409, 117 N.W. 354, 357 (1908). A statutory dedication is "in the nature of a

---

1. An implied dedication is sometimes referred to as "common-law dedication" or "dedication by estoppel." *Carlson v. Burkhart*, 271 Kan. 856, 27 P.3d 27, 32 (2001); *see Collins v. Taylor*, 518 So.2d 602, 605–06 (La.App.1987); *Johnson v. Ferguson*, 329 Mo. 363, 44 S.W.2d 650, 653 (1931).

grant," while a common-law dedication "rests upon the principles of estoppel in pais." *Cole,* at 357.

> The dedication, therefore, is regarded not as transferring a right, but as operating to preclude the owner from resuming his right of private property, or indeed any use inconsistent with the public use. The ground of the estoppel is that to reclaim the land would be a violation of good faith to the public and to those who have acquired private property with a view to the enjoyment of the use contemplated by the dedication.

*Ark. State Highway Comm. v. Sherry,* 238 Ark. 127, 381 S.W.2d 448, 451 (1964); *Whittom v. Alexander–Richardson Partnership,* 851 S.W.2d 504, 508 (Mo.1993) (holding, "because dedication is a theory premised on estoppel ... the owner can be precluded from resuming rights over the property if the public acts upon the owner's manifestations"). Indeed, we have previously stated "the common-law method of dedication is analogous to ... [equitable] estoppel." *Cole,* at 357. If a dedication arises through "legal implication, ... the landowner is estopped from precluding public use of the land." *Brown,* at 442.

[¶ 14] The property interest conveyed through a common-law dedication is an easement. *Pleak v. Entrada Prop. Owners' Ass'n,* 207 Ariz. 418, 87 P.3d 831 at * 834 (holding, "[t]he effect of a common law dedication is that the public acquires an easement to use the property for the purposes specified, while the fee remains with the dedicator"); *see Headley v. Northfield,* 227 Minn. 458, 35 N.W.2d 606, 609 (1949) (holding, "[t]he effect [of a common-law dedication] is to create only such an estate or right in the public as is necessary to enable it to enjoy the uses for which the dedication is made and to reserve the fee to the dedicator"); *General*

*Auto Serv. Station v. Maniatis,* 328 Ill. App.3d 537, 262 Ill.Dec. 568, 765 N.E.2d 1176, 1183 (2002) (holding, "a common law dedication keeps the fee vested in the donor, burdened with an easement over the way in question and subject to the acceptance of the easement by the public"); *Cenac v. Pub. Access Water Rights Ass'n,* 851 So.2d 1006, 1012 (La.2003) (holding, "an implied dedication gives rise to a servitude of public use and does not transfer ownership"); C.J.S. *Dedication* § 2, 280 (2001) (common-law dedication).

[¶ 15] Common-law dedication requires, (1) an intention to dedicate and, (2) public acceptance of the dedication. *Cole,* 17 N.D. 409, 117 N.W. at 358. Intent to dedicate, "is to be ascertained from the acts of the owner, and not from the purpose hidden in his mind.... Dedications have been established in every conceivable way by which the intention of the party can be manifested." *Ramstad v. Carr,* 31 N.D. 504, 154 N.W. 195, 199 (N.D.1915) (citation omitted); *Cole,* at 358 (stating, "the intention to dedicate be properly and clearly manifested"); *Security Federal Savings & Loan Ass'n v. C & C Investments,* 448 N.W.2d 83, 87 (Minn. App.1989) (holding that, "intent need not be express, and in fact need not actually exist in the owner's mind, but may be implied from acts and conduct of the owner which are unequivocally and convincingly indicative of a dedication and upon which the public has a right to and does rely").

[¶ 16] A common-law dedication must be proven by clear and convincing evidence. *See Cole,* 17 N.D. 409, 117 N.W. at 356; *Sons of Union Veterans of Civil War, Dept. of Iowa v. Griswold American Legion Post 508,* 641 N.W.2d 729, 734 (Iowa 2002); *Smith v. Sponheim,* 399 N.W.2d 899, 901 (S.D.1987); *Descheemaeker v. Anderson,* 131 Mont. 322, 310

P.2d 587, 591 (1957). The proponent of the dedication bears the burden of proof. *Carlson v. Burkhart*, 271 Kan. 856, 27 P.3d 27, 32 (2001); 14 Richard R. Powell, *Powell on Real Property*, § 84–01[7][b][I] (Michael Allan Wolf, ed., 2004).

[¶ 17] Whether a common-law dedication has been made is a question of fact, and the trial court's determination will not be reversed unless it is clearly erroneous. *Wojahn v. Johnson*, 297 N.W.2d 298, 307 (Minn.1980); *see* N.D.R.Civ.P. 52(a); *see also Pryatel v. K.P.*, 2004 ND 52, ¶ 27, 676 N.W.2d 744. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is some evidence to support it, or if, although there is some evidence to support it, on the entire evidence, this Court is left with a definite and firm conviction a mistake has been made." *Pryatel*, 2004 ND 52, ¶ 27, 676 N.W.2d 744. Here, the trial court found the Tiberts failed to show, by clear and convincing evidence, that conduct on the part of either BNSF or its predecessors established a common-law dedication of Kilowatt Drive, either impliedly or expressly. In its order, the trial court made at least thirteen findings to support its factual determination that the railroad's conduct did not establish a dedication. According to the trial court, the railroad's allowance of public use provided it with commercial benefits, as it allowed access to the rail line and nearby businesses. Additionally, Kilowatt Drive provided access to the railroad's own property. The railroad did not participate in the City's efforts to pass ordinances creating Kilowatt Drive. The trial court found the railroad did convey property within the right of way, including a portion of Kilowatt Drive, but the only property conveyed was that which passed over Harriet Drain. The trial court also found this dedication was made to Walsh County, and the rail-road made no effort to convey any other portions of Kilowatt Drive. Other than the Harriet Drain conveyance, there is also no abstract of title or other documentation related to BNSF or its predecessors that show any reference to a conveyance in fee, dedication, or easement for the Kilowatt Drive property.

[¶ 18] The trial court also made findings related to, or referring to, our decision in *Nowling v. BNSF Ry.*, 2002 ND 104, 646 N.W.2d 719. Relying on *Nowling*, the trial court found BNSF and its predecessors have continued railroad operations on the rail line, while Minto Grain has continued grain elevator operations in the same location. In other words, the property had not been abandoned. The trial court found that all of the railroad right of way constituted a public highway and was therefore not subject to adverse possession or prescription, under our holding in *Nowling*. The trial court then applied the principles of that holding, finding, "it would follow that dedication by estoppel is also not possible."

[¶ 19] We conclude the trial court did not err in finding a lack of clear and convincing evidence that BNSF or its predecessors dedicated Kilowatt Drive. The trial court's interpretation of our holding in *Nowling* was not clearly erroneous. In *Nowling*, we held that an operating railroad's right of way was a public highway, under the North Dakota Constitution and, as such, not subject to adverse possession or acquiescence. *Nowling v. BNSF Ry.*, 2002 ND 104, ¶ 14, 646 N.W.2d 719. While we decline to address any specific limitations of our *Nowling* holding today, we note that adverse possession, acquiescence and common-law dedication are based upon similar principles, as each allows for the transfer of an interest based on the public, or an individual's use or lack of use of property. Because common-law

dedication is based upon principles of estoppel, and could reasonably be viewed as similar to adverse possession and acquiescence, the trial court did not err in applying *Nowling*. *See Connell v. Baker*, 458 S.W.2d 573, 578 (Mo.App.1970). A common-law dedication is, "a doctrine predicated on equitable estoppel or estoppel in pais by reason of a user by the public under such circumstances and for such a period of time, with the acquiescence of the owner, as to imply on his part a dedication of the land and a prescriptive right thereto on the part of the public by its acceptance and appropriation as a public highway." *Id.* (emphasis and citations omitted).

[¶ 20] Upon reviewing the entire record, we do not have a definite and firm conviction that the trial court was mistaken in finding the Tiberts failed to show, by clear and convincing evidence, that a common-law dedication occurred. We conclude the trial court's findings, based on the evidence before it, were not clearly erroneous.

## IV

[¶ 21] We affirm the judgment of the trial court dismissing the Tiberts' action for declaratory relief.

[¶ 22] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.